UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MAINE MUNICIPAL | ) | |
| ASSOCIATION, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:14-cv-00311-JAW |
| | ) | |
| MARY MAYHEW, Commissioner, | ) | |
| Maine Department of Health and | ) | |
| Human Services, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON MOTION TO REMAND

The rules under which a federal court evaluates whether to retain a case removed from state court are occasionally obtuse. Here, the Plaintiffs filed a complaint in state court, the Defendants removed it to federal court, and the Plaintiffs want it returned to state court. Under rules peculiar to a federal court's retention of jurisdiction in such a case, the Court agrees with the Plaintiffs that the case belongs in state, not federal, court and remands the case to state court.

In making this ruling, however, the Court cautions the parties that it is making no express or implied comment on the merits of the Plaintiffs' lawsuit or the merits of the Defendants' defenses and counterclaims. A backdrop to this lawsuit is a seminal controversy between the authority of the Governor of the state of Maine to enforce a statute without formal administrative rulemaking and the authority of the Attorney General of the state of Maine to prevent its enforcement without such formal

rulemaking. The Court rules only that a state, not a federal court should determine a legal question so fundamental to the proper operation of Maine state government.

## I. BACKGROUND

### A. Factual Backdrop[1]

#### 1. The Personal Responsibility and Work Opportunity Act of 1996

On August 22, 1996, President Clinton signed into law "The Personal Responsibility and Work Opportunity Act of 1996" (PRWORA), which provided that an alien not lawfully present in the United States is not eligible for state or local public benefits unless the state passes a new law after August 22, 1996 affirmatively making them eligible.[2]  8 U.S.C. § 1621(a); *see Petition for Review Under Rule 80C with Compl. For Declaratory J. and Injunctive Relief* (*Compl.*), Attach. 2, Ex. A, *Me.*

---

[1]     The Court gleaned this background from the First Amended Complaint and its attachments.

[2]     8 U.S.C. § 1621(a) reads:

   In general, notwithstanding any other provisions of law and except as provided in subsections (b) and (d), an alien who is not - -

   (1) A qualified alien (as defined in section 431),
   (2) A nonimmigrant under the Immigration and Nationality Act, or
   (3) An alien who is paroled into the United States under section 212(d)(5) of such Act for less than one year,

is not eligible for any State or local public benefit (as defined in subsection (c)).

Exceptions include (1) assistance for medical emergencies, (2) short-term, non-cash, in-kind emergency disaster relief, (3) public health assistance for immunizations; (4) programs, services and assistance approved by the Attorney General of the United States.  8 U.S.C. § 1621(b)(1)-(4).  The statute provides in subsection (d):

   A State may provide that an alien who is not lawfully present in the United States is eligible for any State or local public benefit for which such alien would otherwise be ineligible under subsection (a) only through the enactment of a State law after the date of the enactment of this Act, which affirmatively provides for such eligibility.

8 U.S.C. § 1621(d).

*Dep't of Health & Human Servs., Office for Family Independence, General Assistance Program Guidance* at 1 (ECF No. 5-2).

### 2. The Maine Department of Health and Human Services June 13, 2014 Notice to Maine Municipalities

On June 13, 2014, the Maine Department of Health & Human Services (DHHS)[3] issued "General Assistance Program Guidance" to all municipalities regarding enforcement of PRWORA. *Id.* at 1-2. In its guidance memorandum, DHHS notified municipalities that it "will no longer provide reimbursement to a municipality for General Assistance provided to aliens who are not lawfully present in the United States." *Id.* at 1. The Plaintiffs refer to this notice as the DHHS "Operating Memorandum." *See First Am. Pet. for Review Under Rule 80C with First Am. Compl. for Declaratory J. and Injunctive Relief* at 5 (ECF No. 5-7) (*First Am. Compl.*).

### 3. The Governor's June 20, 2014 Letter to Maine Municipalities

On June 20, 2014, Governor Paul R. LePage wrote to the administrators of Maine municipalities, addressing "contradictory information" between DHHS and the Maine Attorney General regarding "enforcement of the federal law that prohibits giving General Assistance to illegal aliens." *Compl.* Attach. 2, Ex. B, *Letter from Governor Paul R. LePage to Town Adm'r* at 1 (June 20, 2014). He wrote that "DHHS worked with the Office of the Attorney General for months on a proposed rule to

---

[3] Throughout the opinion, the Court refers to DHHS. There is of course a federal department known as the United States Department of Health and Human Services. The Court's references to DHHS are only to the state of Maine Department of Health and Human Services, not the federal department.

exclude certain non-citizens from General Assistance." *Id.* at 1. Although the proposal was initially approved by the Attorney General's Office, the Governor wrote that "Attorney General Mills then said the rule was unconstitutional." *Id.* The Governor wrote that DHHS "went back and tailored our proposed rule to meet the Attorney General's concerns and to stay within the boundary of federal law, but she turned us down again." *Id.* The Governor said that the Administration "found it inexplicable that the state's top law enforcement official would encourage municipalities to violate federal law." *Id.* He emphasized that he expected "the head of each municipality to communicate with DHHS to certify in writing compliance with federal law." *Id.* at 2. He informed the municipalities that if "DHHS finds that a municipality fails to comply with the law, it will cut off all General Assistance reimbursement to that community." *Id.*

### 4. The Maine Attorney General's June 24, 2014 Statement

On June 24, 2014, the state of Maine Attorney General Janet T. Mills issued a statement providing further background and identifying her concerns regarding the General Assistance guidance. *Compl.* Attach. 2, Ex. D, *Statement of the Attorney General Regarding General Assistance Guidance* (June 24, 2014). In her statement, Attorney General Mills said that in January 2014, the Office of the Attorney General advised DHHS that "there were serious constitutional issues with the rule they were proposing." *Id.* Despite her reservations, "public hearings proceeded and DHHS sent the rule to the Attorney General's Office for final approval." *Id.* The Attorney General referred to a memorandum dated May 16, 2014 "drafted by nonpartisan

staff" which "describes in detail three distinct and serious legal and constitutional concerns" with the proposed rule. Although the DHHS administrators sent "a last minute substantive change to the Attorney General's Office", she said that "this too failed to comply with the law." *Id.* She expressed the opinion that "[t]he fact remains that the executive branch lacks authority to promulgate a change in General Assistance *eligibility*, whether by rule or by edict or by form." *Id.* (emphasis in original).

In her statement, the Attorney General made the following points: (1) that "[i]f the administration desires to change policy based on an 18-year old federal statute, it must do so in accordance with the Maine Constitution and law, with transparency and public input, and without shifting the burden onto cash-strapped towns"; (2) that the federal statute has "never been enforced to our knowledge"; (3) that the federal statute "lacks an enforcement mechanism"; (4) that the federal statute "represents an intrusion into states' rights"; (5) that the federal statute represents "a questionable expansion of Congress' authority under Article I, section 8 of the United States Constitution"; (6) that if the policy were lawfully adopted, "the towns are justifiably concerned about how it would be carried out in a consistent and lawful manner across Maine's nearly 500 municipalities"; (7) that "people who seek General Assistance—the person fleeing domestic violence, the victim of human trafficking, the asylum seeker awaiting federal approval, the family who lost their home to fire or to war—are least likely to have this paperwork on hand during a crisis"; (8) that "[d]enying emergency benefits to children of immigrants, legal or otherwise, might

run afoul of Supreme Court rulings as far back as 1977 and 1982"; and, (9) that the "Governor's edict" makes "no such fine distinctions and therefore puts towns at risk of lawsuits everywhere they turn, depleting scarce property tax revenues provided for police, fire, rescue and schools." *Id.*

Characterizing the DHHS action as "ill-advised", the Attorney General noted that the municipalities "have a right to appeal any decision under 22 M.R.S. [§] 4323, and any applicant has a right to appeal a denial of General Assistance benefits under 22 M.R.S. [§] 4322." *Id.*

### 5.    The Plaintiffs' First Amended Complaint

On July 10, 2014, the Maine Municipal Association, the city of Portland, and the city of Westbrook as Plaintiffs filed suit in Maine Superior Court in Cumberland County against the DHHS and DHHS Commissioner Mary Mayhew as Defendants. *State Ct. Record* Attach. 1, *State Ct. Docket Sheet* at 1 (ECF No. 5-1). On July 28, 2014, the Plaintiffs filed an amended complaint. *First Am. Compl.* The First Amended Complaint seeks judicial review of what they claim are "procedural of the Operating Memorandum and related correspondence from the Office of the Governor, which were not adopted by appropriate agency rulemaking procedure under the Maine Administrative Procedure Act." *Id.* ¶ 5. Plaintiffs noted that the "determination of 'lawfully present alien' status or 'unlawfully present alien' status for persons in the United States is not part of the statutory criteria for eligibility under the Municipal General Assistance law, 22 M.R.S. § 4301 et seq." *Id.* ¶ 8. Echoing the Attorney General's concerns, the Plaintiffs assert that "[s]uch

determinations made by a General Assistance administrator would not be in all cases readily ascertainable substantively under federal law, and would significantly increase program costs given the population served by General Assistance, which often involves persons—both citizens and non-citizens—who may have fled life-threatening circumstances without documentation, or who do not have the means to readily verify lawfully present alien status." *Id.*

The Plaintiffs state that under Maine law, 22 M.R.S. § 4305(3)(C), General Assistance benefits must be "furnished or denied to all eligible applicants within 24 hours of the date of submission of an application" and that such benefits are "also administered, by statute, often on an emergency basis, subject to 22 M.R.S. § 4310." *Id.* Because the DHHS memorandum would "require that any such potentially difficult and complicated determinations about federal 'lawful' or 'unlawful' alien status be made within 24 hours", the Plaintiffs say that these "issues complicate the implementation of the Operating Memorandum policy and procedure, and jeopardize overall reimbursement to the municipality." *Id.* Noting the strict 24-hour or emergency deadlines, the Plaintiffs claim that "if a municipality were to err on the wrong side of determining eligibility because of a complicated 'lawfully present alien' status issue . . ., then that error would jeopardize the municipality's right to its statutorily authorized reimbursement." *Id.* ¶ 11.

After reciting in detail the Attorney General's statement, the Plaintiffs maintain that DHHS guidance statement is "not entirely consistent with the federal law it purports to enforce, because it makes no provision for aspects of the federal

definition of qualified alien status, such as an alien or child of an alien who, under 8 U.S.C. § 1641(c), is the subject of domestic violence." *Id.* ¶ 17. They also assert that a DHHS denial of "any and all reimbursements for non-compliance with the Operating Memorandum would also be in contravention of existing properly promulgated DHHS rules." *Id.* ¶ 18. They claim that such "substantive and conflicting differences between the DHHS, the Office of the Governor, and the Attorney General" place the Plaintiffs "in an irreconcilable predicament." *Id.* ¶ 19. They say that the DHHS has issued a revised report form that requires municipalities to report the "Total # of not 'Lawfully Present' non-citizens, as defined in DHHS guidance that were assisted and for whom reimbursement is being requested." *Id.* ¶ 25. They point out that the DHHS revised form requires a certification from the respective municipal officer that he or she is "not seeking reimbursement for Non-Citizens who are not 'Lawfully Present' as defined in the . . . Guidance Documents." *Id.* They complain that DHHS provided "no lead time or any implementation phase for the new protocol" and no "flexibility in the transition time and resources for training and new administrative practice to accommodate the immediate changes required by the Operating Memorandum . . . ." *Id.* ¶¶ 27, 28.

Framed by an assertion that the Governor's and DHHS's actions violated the Maine Administrative Procedures Act (MAPA), 5 M.R.S. §§ 8001 et seq., the Plaintiffs assert that the Operating Memorandum (1) violates "constitutional and statutory provisions, as alleged above", (2) is "[i]n excess of the statutory authority of DHHS"; (3) is "[m]ade upon unlawful procedure, (4) is "[a]ffected by bias or error of law; (5) is

"[u]nsupported by substantial evidence on the whole record", and (6) is "[a]rbitrary or capricious, or characterized by abuse of discretion." *Id.* ¶ 30.

The Plaintiffs ask the Court to (1) declare that all terms of the Operating Memorandum are null and void for failure to comply with formal rulemaking proceedings in accordance with the MAPA; (2) declare that all municipalities which operate a General Assistance Program pursuant to 22 M.R.S. § 4301 et seq. are not required to comply with the terms of the Operating Memorandum or the related correspondence from the Office of the Governor; (3) declare that the terms of the Operating Memorandum, including policy and operational changes it contains, <u>and any related revisions to General Assistance reimbursement forms</u>, require substantive rulemaking procedures under the MAPA in order to be judicially enforceable requirements for municipal reimbursement of benefits under the Municipal General Assistance law; and (4) enjoin the DHHS from enforcement of the terms of the Operating Agreement or any policy or operational change contained in it, before appropriate rulemaking is complete under the MAPA, resulting in an approved and adopted agency rule and regulation. *Id.* at 14-15 (emphasis in original).

### 6. Intervention

On July 17, 2014, two individuals, Rehma Rebecca Juma and Suavis Furaha moved to intervene in the Plaintiffs' action pursuant to Maine Rule of Civil Procedure 24(b). *State Ct. Record* Attach. 3, *Mot. to Intervene* (ECF No. 5-3). The two intervenors are asylum-seekers who depend on General Assistance to support themselves and in the case of Ms. Furaha, her children as well. *Id.* at 2. In their

proposed Complaint, the Intervenors assert that the DHHS failed to follow the MAPA's requirements for rulemaking. *Id. Compl. for Declaratory and Injunctive Relief* at 6-7 (*Intervenors' Compl.*). They also assert alienage discrimination. *Id.* at 9. They demand judicial review of the rules under the MAPA and contend that the Operating Memorandum violates the equal protection provision of the Maine Constitution. *Id.* at 10.

### 7. The Defendants' Removal

On July 31, 2014, the Defendants removed this case from Cumberland County Superior Court to this Court. *Notice of Removal* (ECF No. 1). Asserting that the Plaintiffs' and Intervenors' Complaints present a federal question under 28 U.S.C. § 1331 or allows for supplemental subject-matter jurisdiction under 28 U.S.C. § 1367, the Defendants invoked this Court's jurisdiction. *Id.* at 4. The Defendants itemized what they contend are the federal questions raised by the Plaintiffs' Complaint: (1) whether by operation of law, PRWORA's lawfully present alien status is part of the statutory criteria for eligibility for General Assistance in Maine; (2) whether the "constitutional issues" identified by the Attorney General and alluded to in the Complaint are federal constitutional issues; (3) whether the DHHS guidance is entirely consistent with the federal law it purports to enforce; and (4) whether the DHHS Operating Memorandum requires municipalities to undertake unconstitutional or unlawful actions under federal constitutional and statutory law. *Id.* at 4-5.

The Defendants also maintain that the Intervenors' reference to equal protection of the law alludes to the Attorney General's view that the Operating Memorandum violates the United States Constitution. *Id.* at 5 (citing *Intervenors' Compl.* ¶ 17). They also say that the Intervenors' proposed Complaint asserts that they would be prevented from applying for and receiving a government benefit to which they would otherwise be eligible, which necessitates a determination of their eligibility under PRWORA. *Id.* (citing *Intervenors' Compl.* ¶ 43).

**B.  Procedural History**

After the Plaintiffs filed their Complaint and Amended Complaint, Defendants filed an answer to Plaintiffs' amended complaint, and filed counterclaims against the cities of Portland and Westbrook on August 11, 2014. *Answer and Countercl. of Def[s]. Maine Department of Health and Human Services and Mary Mayhew, Commissioner, Maine Department of Health and Human Services to First Am. Compl.* (ECF No. 6) (*Answer*).

Turning to the subject of this Order, Plaintiffs filed a motion to remand on August 15, 2014. *Pet'rs/Pls.' Mot. to Remand* (ECF No. 9) (*Pls.' Mot.*). On August 21, 2014, Proposed-Intervenor Plaintiffs filed a memorandum supporting the motion to remand. *Proposed Intervenors' Mot. and Mem. of Law in Support of Pet'rs Mot. to Remand* (ECF No. 13) (*Proposed Intervenors' Mem.*). On September 2, 2014, Defendants filed a response. *Mem. in Opp'n to Mots. to Remand* (ECF No. 15) (*Defs.' Opp'n*). On September 9, 2014, both Plaintiffs and Proposed-Intervenor Plaintiffs

filed replies. *Pls.'/Pet'rs' Reply Mem. in Support of Mot. to Remand* (ECF No. 19) (*Pls.' Reply*); *Intervenor Pls.'/Pet'rs' Reply Mem. in Support of Remand* (ECF No. 19).

## II.  THE PARTIES' POSITIONS

### A.  Plaintiffs' Motion to Remand

Plaintiffs argue that this Court lacks federal question jurisdiction in this matter under the "well-pleaded complaint" rule governing removal, that the amended complaint contains only state causes of action, that neither Defendants' arguments regarding federal preemption nor the pending motion to intervene creates federal question jurisdiction, and that federal abstention principles provide a basis for remand to state court. *Pls.' Mot*. at 1-13. Additionally, Plaintiffs state that the party seeking removal –in this case, DHHS and Commissioner Mayhew—bear the burden of proving that a federal question has been pleaded. *Id*. at 4 (citing *Rossello-Gonzalez v. Calderon-Serra*, 398 F.3d 1, 11 (1st Cir. 2004). Finally, Plaintiffs maintain that "'removal statutes are to be strictly construed and all doubts are to be resolved against removal'", *id*. at 4 (quoting *Fajan v. Foundation Reserve Ins. Co., Inc.*, 683 F.3d 331, 333 (10th Cir. 1982)), and that "'[a]ny ambiguity as to the source of law relied upon by the [ ] plaintiffs ought to be resolved against removal.'" *Id*. at 4 (quoting *Rossello-Gonzalez*, 398 F.3d at 11).

Plaintiffs contend that the Court's analysis of their Complaint should be guided by the "well-pleaded complaint rule", which generally "'prohibits the exercise of federal question jurisdiction if no federal claim appears within the four corners of the complaint.'" *Id*. at 3 (quoting *BIW Deceved v. Local S6, Indus. Union of Marine*

*and Shipbuilding Workers of America*, 132 F.3d 824, 831 (1st Cir. 1997). Furthermore, they argue, "in deciding (for removal purposes) whether a case presents a federal 'claim or right,' a court is to ask whether the plaintiff's claim to relief rests upon a federal right, and the court is to look only to plaintiff's complaint to find the answer.'" *Id.* at 4 (quoting *Rossello-Gonzalez*, 398 F.3d at 10). They submit that "'[t]he existence of a federal defense is not sufficient for removal jurisdiction.'" *Id.* (quoting *Rossello-Gonzalez* at 10).

Applying the well-pleaded complaint rule, the Plaintiffs argue that there is no federal question here because the pleading sets forth "quintessential *state causes of action.*" *Id.* at 5 (emphasis in original). Maine's Municipal General Assistance Program, they assert, "is a purely state legislative program, involving no direct federal funds" that requires Maine municipalities to enact ordinances concerning the administration of program benefits, and establishes a reimbursement program whereby the municipalities are reimbursed by the state for a percentage of benefits paid. *Id.* at 5-6. They point out that Count I of the Complaint asserts a claim under the MAPA and a state court rule of procedure, Rule 80C, governing the proceedings for such claims. *Id.* at 5. Although they state that the "total cut-off 'penalty' unilaterally imposed on the municipalities for *all* reimbursements . . . does not appear to be required by any federal law", *id.* at 8 (emphasis in original), Plaintiffs assert that they make "no claim that the state administrative agency . . . failed to comply with any provision of federal law or the United States Constitution." *Id.* Plaintiffs

likewise assert that the declaratory and injunctive relief sought under Count II is based on the same facts outlined in Count I. *Id.*

With respect to the interplay between PRWORA and their Complaint, Plaintiffs maintain that "state issues are at the fore of this case" and that Defendants' contention that the guidance is consistent with federal policy does not create federal question jurisdiction. *Id.* at 6. Plaintiffs say that the federal law mentioned in the factual allegations of their amended complaint "is a matter of background only" and maintain that even if the Defendants believe that the guidance is required under federal law, Maine's Governor still "may not impose a new policy in a legislative program without submitting the policy to substantive and procedural rulemaking under the Maine Administrative Procedure Act." *Id.* at 6-7. Thus, they argue, federal question jurisdiction is not present here because whether the Governor can enact new policies he believes are required by federal law does not meet the well-pleaded complaint standard, and may not be the basis for removal. *Id.* at 7.

Plaintiffs next contend that the Court cannot use the Intervenor Plaintiffs' motion as a basis for finding federal question jurisdiction. First, they state, "it is only Petitioners/Plaintiffs' pleading that provides the four-corners analysis for original federal court jurisdiction on removal." *Id.* at 9. Second, Plaintiffs argue that because the Intervenor Plaintiffs' motion to intervene had not been ruled on by the state court prior to the notice of removal, the Defendants are not parties to the Intervenor Plaintiffs' case, and thus "no reference should be made to [I]ntervenors' filings for analysis of whether removal was proper in this case." *Id.* at 9-10.

Finally, Plaintiffs say that the "[p]rinciples underlying the doctrine of federal abstention provide another basis for this Court to decline to exercise jurisdiction and remand to state court. . . ." *Id.* at 10. They claim that three variations of abstention favor remand to state court. *Id.* First, Plaintiffs argue that they "raise important state interests that are integral to this case" and that "state judicial proceedings afford an adequate opportunity for any peripheral claims to be raised . . . ." *Id.* at 11 (citing *Younger v. Harris*, 401 U.S. 37 (1971) and *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987)). Second, Plaintiffs maintain that, even assuming the case poses a federal constitutional question, the Court should abstain under *Pullman* principles because this case involves "an unclear issue of state law [which] would, if resolved, make it unnecessary for the federal court to rule on a federal constitutional question posed." *Id.* at 12 (citing *R.R. Comm'n v. Pullman Co.*, 312 U.S. 496 (1941)). Third, Plaintiffs argue that abstention is provided under *Burford* because the issues they present "are quintessential matters of state governance, state policy, the powers of state government and its branches, the scope of agency powers and rulemaking procedures in administering this state program." *Id.* at 13 (citing *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)).

## B. Proposed Intervenor Plaintiffs' Supporting Arguments

The Proposed-Intervenors support Plaintiffs' motion to remand. *Proposed Intervenors' Mot.* at 1. Specifically, the Proposed-Intervenors maintain they "have not alleged a violation of the federal constitution or any federal statute" and that "[t]he Equal Protection clause that defendants are alleged to have violated is the one

found in Article I, Section 6-A of the Maine Constitution . . . ." *Id.* at 2. Resolution of the Proposed-Intervenors' Complaint, they argue, "only depends on resolution of two purely state law questions" which are, first, whether DHHS complied with the Maine Administrative Procedures Act when it changed the eligibility rules for General Assistance, and second, whether DHHS complied with the Maine Constitution's equal protection clause. *Id.* at 3. Furthermore, they argue, this case does not "depend on the existence of a federal law question deeply embedded within a state law question, pointing to the Supreme Court's holding in *Grable v. Darue*. *Id.* at 3 (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)). "Deeply embedded cases are rare" they maintain, and argue that in this case, "the federal issue is neither part of the [Plaintiffs'] nor the Proposed-Intervenors' legal claims." *Id.* at 4. In short, they contend, the issue is "nothing more than whether the 'guidance' issued by the Defendant violates the Maine Administrative Procedures Act." *Id.*

### C. Defendants' Response

Defendants assert that a "substantial federal question" is at "the heart of this case; specifically, does PRWORA "prohibit Maine municipalities from paying General Assistance to federally ineligible aliens and prohibit DHHS from reimbursing municipalities for benefits paid to such aliens?" *Defs.' Opp'n* at 1. Defendants argue that the controlling caselaw is set forth in *Grable v. Darue*, and contend that if the test in *Grable* is properly applied, this Court will find that the case lies within its federal-question jurisdiction. *Defs.' Opp'n* at 2.

Defendants argue that Plaintiffs' contention that none of their claims falls within the Court's federal-question jurisdiction is "wrong." *Defs.' Opp'n* at 3. In their view, federal-question jurisdiction over a complaint stating a state-law cause of action exists under the "*Grable* test" when the complaint presents a federal issue that is "(1) necessarily raised by Plaintiff's claim; (2) actually disputed; (3) substantial; and (4) capable of resolution without disrupting the federal-state balance of power. *Id*. at 4 (citing *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013)). Defendants address each element of the *Grable* test.

First, Defendants argue that Plaintiffs' Complaint "necessarily raises" a federal question because their "asserted right to relief under state law requires resolution of a federal question." *Id*. at 5 (quoting *R.I. Fishermen's Alliance, Inc. v. R.I. Dept. of Env. Mgmt.*, 585 F.3d 42 (1st Cir. 2009)). Defendants say that Plaintiffs' Complaint contains claims about federal law that satisfy this element – specifically, claims that 8 U.S.C. § 1621 violates the Equal Protection Clause and the Tenth Amendment, and that compliance with 8 U.S.C. § 1621 is not required in Maine. *Id*. at 6.

Furthermore, they argue, Plaintiffs' self-styled procedural challenge raises an essential federal issue, "namely, whether municipalities are already subject to the prohibition in 8 U.S.C. § 1621 against furnishing General Assistance to federally ineligible aliens and whether 8 U.S.C. § 1621 prevents DHHS from reimbursing municipalities for General Assistance payments made to federally ineligible aliens." *Id*. at 7. Defendants maintain that for Plaintiffs to succeed in their claim, they must

prove that the DHHS memorandum is a "rule" under Maine law that should have gone through the rulemaking process, and to do so, Plaintiffs must prove both that the memorandum is not an "explanatory statement" –not subject to rulemaking procedures – and that it is "judicially enforceable independent of the requirements of federal law." *Id.* at 7.

Additionally, Defendants contend that the First Circuit "has held a state statutory challenge to state agency action arises under federal law for purposes of § 1331, when the challenger's theory of relief under the state statute requires proof that a federal law is not applicable." *Id.* at 8 (citing *R.I. Fishermen's Alliance, Inc.*, 585 F.3d at 49). Here, Defendants maintain, Plaintiffs must prove the non-applicability of 8 U.S.C. § 1621 "in order to make out an essential premise of their state-law challenge – namely, that DHHS's guidance is a 'rule.'" *Id.* at 9. Defendants say that the determination of whether the DHHS memorandum is "guidance" or a "rule" depends on whether 8 U.S.C. § 1621 compels the municipalities to withhold General Assistance benefits from federally-ineligible aliens. *Id.*

Finally, with respect to whether Plaintiffs' Complaint "necessarily raises" a federal issue, Defendants argue that both Plaintiffs and Proposed-Intervenor Plaintiffs expressly raise claims of federal constitutional violations. *Id.* at 10. Furthermore, to the extent that the Plaintiffs and Proposed-Intervenor Plaintiffs attempt to characterize any of their claims as arising under provisions of the Maine Constitution, Defendants argue that federal statute and the federal Constitution trump the Maine provisions. *Id.* at 10-11.

Second, Defendants argue that the second element of the "Grable test" is satisfied because there is an actual dispute over the issue of "whether 8 U.S.C. § 1621 makes non-citizen applicants for General Assistance in Maine ineligible for benefits unless they fall into one of the categories set forth in § 1621. *Id.* at 11.

Third, Defendants argue that the issues of federal law presented in this case are "substantial" because Congress found 8 U.S.C. § 1621 necessary to further "the immigration policy of the United States" and expressly stated it was enacting the statute "to further the federal Government's 'compelling interest' in discouraging immigration by aliens lacking adequate financial support . . . ." *Id.* at 12 (quoting PRWORA § 400(2), (5)). The issue here is "programmatic and general", Defendants argue, rather than "specific to any individual's claim for local benefits" and "goes to the heart of" a "congressional plan for carrying out federal immigration policy". *Id.* at 12-13.

Fourth, Defendants maintain that the exercise of federal jurisdiction in this case does not upset the balance of state and federal responsibilities. *Id.* at 13. The "compelling interest" of regulating immigration into the United States and the "substantial federal interest" in regulating "the mechanism by which States might make non-citizens eligible for local benefits" are implicated in this dispute, and "[i]t would not upset Congress's expectations" that such a dispute would be heard in federal court. *Id.* at 13-14. In sum, Defendants argue that *Grable* provides the applicable analytical framework in this case, and that the issues presented here satisfy the *Grable* elements for federal-question jurisdiction.

Last, Defendants respond to Plaintiffs' abstention arguments, noting at the outset that federal courts have a "virtually unflagging obligation to exercise the jurisdiction given them" (citing *Colo. R. Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976)), and thus that "abstention doctrines must be very narrowly construed". *Id.* at 14. They argue that *Younger* and *Burford* are inapplicable, and that Plaintiffs have not alleged sufficient information to support abstention under *Pullman*. *Id.* at 16-17.

### D.     Plaintiffs' Reply

Plaintiffs stand firm. They maintain that the "heart of this case" is DHHS' imposition of the Governor's "total cut-off" reimbursement penalty, and that they brought the Rule 80C Petition for Review "merely to require DHHS to adopt a rule, before imposing penalties that it constructs (or that the Office of the Governor constructs) out of whole cloth without any public hearing." *Pls.' Reply* at 2. In their view, the Governor lacks the power under state law and the Maine Constitution to impose such a penalty. *Id.*

Plaintiffs turn to Defendants' arguments. First, they argue that no "substantial question of federal law" exists here because "no aspect of Plaintiffs/Petitioners' case requires a finding of a DHHS violation of federal law." *Id.* at 3. They say that Defendants raise 8 U.S.C. § 1621 as an affirmative defense, and "implicitly concede[] in [their] opposition to the Motion to Remand that a federal defense, like the defense of preemption, cannot be the basis to remove a case to federal court." *Id.* Contrasting this case to *Grable*, Plaintiffs point out that the quiet title

claim in *Grable* was necessarily dependent on federal law, whereas this action does not depend on any interpretation of a federal statute. *Id*. Additionally, they distinguish *Grable*, noting that there is no federal agency action "present or even at stake in this case." *Id*. at 4. Indeed, they argue, the federal statute "by its terms" does not envision a federal agency seeking to enforce or apply any aspect of 8 U.S.C. § 1621, because the statute "allows every state, should it choose, to enact law that exempts it from the federal standard." *Id*. Next, Plaintiffs distinguish this case from *R.I. Fishermen's Alliance* on the basis that this case presents a challenge to a state agency's exercise of power and authority, whereas in *Fishermen's*, the state agency determined that a "unique state statute incorporating federal standards required that the agency adopt those new standards—and so the agency adopted them, through valid rulemaking." *Id*. at 5 (citing *R.I. Fishermen's Alliance*, 585 F.3d 42 at 46-47).

Second, Plaintiffs reject Defendants' contention that their Complaint references federal law and the Constitution. They say that the "constitutional violation" they allege is a reference to the Maine constitution, "which sets outer limits on the delegation of power to a state administrative agency by the state legislature." *Id*. at 6. It is precisely the scope of that authority under the Maine Constitution, they contend, that they are challenging. *Id*. Additionally, they state that Defendants' argument that federal-question jurisdiction is triggered by Plaintiffs' quotations of the Maine Attorney General's statements in their Complaint, "is easily discarded." *Id*. at 7.

Finally, Plaintiffs respond to Defendants' assertion that to prove that the DHHS memorandum is a "rule" as opposed to an "explanatory statement", Plaintiffs must address a federal question. *Id.* Plaintiffs contend that "there is no dispute" that "DHHS is enforcing its Operating Memorandum, *and the related correspondence from the Office of the Governor* which sets forth the total cut-off penalty, as an unadopted set of rules." *Id.* (emphasis in original). Their claim, they say, is that the new policies and procedures "are not contained in any legislative delegation of power to the DHHS, nor any adopted agency rule . . . [nor] within the scope of power of the state's executive branch." *Id.* at 7-8.

### E. Proposed-Intervenors' Reply

The Proposed-Intervenors agree with and adopt the Plaintiffs' arguments, and make two additional arguments. First, they state "[s]tate constitutional claims are rare in Maine, but they are not extinct", that "a constitutional challenge is not necessarily a federal challenge", and that "Defendants erred in equating a claim under the Maine constitution with a claim under the federal constitution". *Proposed-Intervenors' Reply* at 2. Second, they argue that "Congress's plenary naturalization power has nothing to do with whether this Court or the Maine Superior Court has jurisdiction over plaintiffs' and intervenors' claims" because this is not a case where Congress, exercising plenary authority over some subject, has completely preempted any state role in enforcing or regulating that subject. *Id.*

## III. DISCUSSION

### A. Federal-Question Jurisdiction

As a threshold issue, removal of an action from state court to federal court is proper only if the federal court has original jurisdiction. 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The burden of establishing federal jurisdiction is upon the party who removed the case to federal court. *BIW Deceived,* 132 F.3d 824 at 831 (1st Cir. 1997). Removal statutes are to be strictly construed against removal. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941). Ambiguities "as to the source of law relied upon by the . . . plaintiffs ought to be resolved against removal." *Rossello-Gonzalez*, 398 F.3d 1 at 11.

Because the Defendants in this case are not claiming diversity as the basis for jurisdiction, a federal question must be present for the Court to exercise jurisdiction. *See Caterpillar Inc. v. Williams*, 482 U.S. at 392; *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 11 n. 9 (1983). Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In 2009, the First Circuit addressed so-called "arising under" jurisdiction at length. *R.I. Fishermen's Alliance*, 585 F.3d at 42-52. The First Circuit stated, "[t]here is no mechanical test for determining when an action 'arises under' federal law." *Id.* at 47. However, there are generally two types of action that fall within federal question jurisdiction. *Id.* The first category is comprised of suits in which "plaintiff pleads a cause of action that has its roots in federal law". *Id.* at 48. The second, "and far more rare" type of actions involve "embedded federal questions"; that is, "suits in which plaintiff pleads a state-law cause of action but that cause of action 'necessarily raises a stated federal issue,

actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id*. (quoting *Grable*, 545 U.S. at 314).

## B.     The "Well-Pleaded" Complaint Rule

Against this backdrop, the Court is mindful of the well-pleaded complaint rule, which "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Williams,* 482 U.S. at 392. This means that a federal court may not exercise federal question jurisdiction "if no federal claim appears within the four corners of the complaint." *BIW Deceived*, 132 F.3d at 831. In other words, the Plaintiff's well-pleaded complaint "must exhibit, within its four corners, either an explicit federal cause of action or a state-law cause of action that contains an embedded question of federal law that is both substantial and disputed." *R.I. Fishermen's Alliance*, 585 F.3d at 48. Finally, a "case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption. . . ." *Williams*, 482 U.S. at 393 (emphasis in original).

An examination of Plaintiffs' First Amended Complaint reveals no federal claim on its face. There is some dispute between the parties as to whether the Complaint refers to the United States Constitution as opposed to the Maine Constitution, and whether the Plaintiffs have made federal claims by incorporating by reference the letter from Maine's Attorney General to the municipalities. The Plaintiffs attached as Exhibit D to their Complaint the Attorney General's Statement. In that Statement, the Attorney General mentions "serious constitutional concerns

with the rule [DHHS was] proposing." *Att'y Gen. Statement* at 1. Additionally, the Attorney General wrote that "the federal statute on which the Governor relies . . . represents an intrusion into states' rights and a questionable expansion of Congress' authority under Article I, section 8 of the United States Constitution." *Id.* She also said that "[d]enying emergency benefits to children of immigrants, legal or otherwise, might run afoul of Supreme Court rulings as far back as 1977 and 1982." *Id.*

Even if the Attorney General believed that the DHHS action presented federal constitutional issues, the Plaintiffs here have elected not to pursue those theories in their lawsuit. To attach to a complaint a document that suggests the plaintiffs could pursue a federal question that they chose to forego in their complaint does not change the master of the complaint rubric. A potential, but unasserted federal theory of action does not by itself create federal question jurisdiction.

The Court turns to the more difficult question of whether there is an "embedded federal question" that confers jurisdiction. The two state law claims within the First Amended Complaint that might contain "embedded federal questions" are: (1) a claim under the MAPA, 5 M.R.S. §§ 8001 et seq., that the guidance memorandum fails to comply with statutory rulemaking procedures; or (2) a request for declaratory judgment that, under 22 M.R.S. § 4301, all municipalities which operate a General Assistance Program are not required to comply with the terms of the guidance memorandum.[4] *See First Am. Compl.* at 15. The First Circuit

---

[4] The Defendants make no claim that the state constitutional issue that the Plaintiffs raised is a federal constitutional issue in disguise. Even though the state constitutional provision may echo federal equal protection arguments, the language of the Maine Constitution, not the United States Constitution, and Maine, not federal, judicial interpretations of that language would control.

has stated that a "three-step progression suggested by the Supreme Court's decision in *Grable*" determines whether an "embedded federal question" exists in a plaintiff's claim: (1) whether plaintiff's "well-pleaded complaint necessarily raises a federal question"; (2) whether the federal question is "actually disputed and substantial"; and (3) whether the question "is one that a federal court may entertain without impermissibly tilting the balance of federal and state responsibilities." *R.I. Fishermen's Alliance*, 585 F.3d at 49. The leading case on "embedded federal question" jurisdiction in this Circuit is *R.I. Fishermen's Alliance*, which both parties claim supports their position.

The plaintiffs in *R.I. Fishermen's Alliance* alleged only state-law claims, prompting the First Circuit to consider whether a federal question was embedded in their complaint for the purposes of determining jurisdiction. *Id*. at 49. In *Fishermen's*, the state statute under which plaintiffs attacked the state agency's action specifically provided that the agency could not adopt "retroactive control dates" – which plaintiffs alleged the agency had indeed taken – unless that action was required by federal law, regulation or court decision. *Id*. at 49. Additionally, federal law and regulation laid out the federal-state co-management framework in some detail. *Id*. at 46 (Federal statute made state compliance with interstate fishery management plans compulsory, designated an interstate commission to develop fishery management plans; once a plan was adopted, each affected state was required to implement it, usually through state laws and regulations). The First Circuit found that the plaintiffs' well-pleaded complaint required resolution of a federal question,

to wit, "whether federal law, in the form of a fishery management plan promulgated under the [interstate fisheries agreement], 'expressly required'" the action the agency took. *Id*. at 49. Additionally, the *Fishermen's* Court found that the state-law question of whether the agency director exceeded his authority "necessarily entail[ed] answering the embedded federal question of whether federal law required him to act as he did." *Id*. (finding that state law granted the agency director the authority to adopt retroactive control dates "if, and only if, a 'federal law, regulation or court decision' expressly require[d] their use").

Plaintiffs' claims in this case present a different situation. Neither of the state statutes at issue explicitly or implicitly incorporates federal statutes or standards. The MAPA, which the Plaintiffs claim DHHS must follow before enforcing the federal statute, governs the process by which DHHS must initiate rules pursuant to its rulemaking authority, but does not mention the enforcement of federal law. Section 4305 of the Municipal General Assistance statutory program references eligibility standards, but provides that municipalities are the entities that establish the standards and determine eligibility for General Assistance benefits, but also does not mention the federal statute. 5 M.R.S. § 4305(3). In contrast, the federal question in *R.I. Fishermen's Alliance* was "inherent in the state-law question itself because the state statute expressly reference[d] federal law." *Id*. at 50 (emphasis added) (citing *Franchise Tax*, 463 U.S. at 13 (declining to extend federal question jurisdiction where "California law establish[ed] a set of conditions, without reference to federal law")).

Put another way, there is no "express incorporation of federal law into the state statute on which plaintiffs' cause of action is grounded." *Id*. at 50-51.

Even assuming that at least a portion of the resolution of this issue is a matter of state law, the Defendants respond that the executive branch is simply attempting to execute the dictates of a federal statute. To determine the scope of the Defendants' authority, they say it will be necessary to interpret the language of the federal statute, 8 U.S.C. § 1621(a), and to resolve whether the federal law complements or conflicts with state statutes. A further consideration is whether the federal question is necessary to the resolution of the Plaintiffs' claim or is a defense, a question that has no clear answer. Assuming, without deciding, that the dispute over the impact of the federal statute is "actually disputed and substantial", *Fishermen's*, 585 F.3d at 51, the Court turns to whether the assumption of federal jurisdiction is likely to "disturb the balance of federal and state judicial responsibilities." *Id.* at 52.

Here, the Plaintiffs maintain that before the DHHS may impose the requirements in its Operational Memorandum, it must first comply with the MAPA rulemaking process. The MAPA process includes the obligation to present the proposed rule change to the Attorney General for approval under 5 M.R.S. § 8056(1)(A). *See First Am. Compl.* ¶ 14. 5 M.R.S. § 8056(1)(A) requires an agency to submit a proposed rule "to the Attorney General for approval as to form and legality." Section 8056(B) contemplates that the Attorney General signs the original rule before the proposed rule is published. In this case, the Attorney General did not approve

the proposed rule and the MAPA does not suggest what happens when the agency disagrees with the Attorney General's conclusion.

Under the Maine Constitution, the Governor is vested with the "supreme executive power of this State." ME. CONST. art. V, § 1. The Maine Constitution charges the Governor to "take care that the laws be faithfully executed." ME. CONST. art. V, part first, § 12. The Maine Supreme Judicial Court has written that "[i]t is fundamental that the powers of the Governor found in the Constitution cannot be altered or changed, increased or lessened, through action of the Legislature, and that the Governor cannot escape his constitutional powers and obligations." *State v. Simon*, 149 Me. 256, 261, 99 A.2d 922 (1953).

The Attorney General is also a constitutional officer, ME. CONST. art. IX, § 11, and is charged with various statutory duties. *See* 5 M.R.S. § 191(1) ("The Attorney General is the executive head of the Department of the Attorney General"). If the Plaintiffs are correct in saying that to enforce this federal statute, the Governor and an executive branch agency must in effect obtain the approval of the Attorney General, the ability of the executive branch of state government to exercise "supreme executive power" may be substantially constrained because the Governor would be required to obtain prior approval of the Attorney General before undertaking similar executive actions. If the Governor and the Attorney General are at odds as they are here, the authority of the executive branch of state government could be effectively stalemated, the legal opinion of the Attorney General trumping the executive authority of the Governor.

Whether this has been standard operating procedure in the state of Maine or whether it represents a rebalancing of executive authority in favor of the Attorney General is unclear. The Court suspects that virtually all rules proposed by the Governor or state agencies receive the imprimatur of the Attorney General, perhaps with some tweaking of language. Nevertheless, whether in this case DHHS must treat its guidance to municipalities about how to comply with federal law as a "rule" subject to the MAPA process appears to be a matter purely of state law with significant implications as to how state government must function.

As the people of Maine know, there is a difference between the party politics of the current Governor and the current Attorney General. The Governor, a member of the Republican Party, is elected by a "plurality of all of the votes returned." ME. CONST. art. 5, part first, § 3. By contrast, under Article 9, § 11 of the Maine Constitution, the Attorney General is "chosen biennially by joint ballot of the Senators and Representatives in convention." ME. CONST. art. 9, § 11. A majority of the Senate and House was comprised of members of the Democratic Party, and the current Attorney General is a member of the Democratic Party. The Attorney General took pains to emphasize that the Statement was prepared by "nonpartisan staff", *Att'y Gen. Statement* at 1; nevertheless, this dispute has an undercurrent of state politics, which is another reason the Court is striking the balance in favor of remanding it to a state court judge.[5] Moreover, to the extent this case raises the balance of authority between the Governor of the state of Maine and the Attorney

---

[5] On November 4, 2014, Governor LePage was reelected to a four-year term and on December 3, 2014, the Maine Legislature by joint ballot reelected Janet Mills as Attorney General.

General of the state of Maine, it presents an issue that transcends the politics of the moment and deserves considered thought by the state judiciary.

The Court concludes that in this case, the balance between federal and state judicial responsibilities would be disturbed if this Court assumed jurisdiction. Here, the dispute between the Plaintiffs and the Defendants is the progeny of the same dispute between the Governor and the Attorney General and to a large extent, the Plaintiffs—intentionally or not—are proxies for the legal positions taken by the Attorney General and the Defendants, as a state agency and state Commissioner, are proxies for the legal position of the Governor. Indeed, the Plaintiffs' claims are the same state law concerns that the Attorney General expressed in her memorandum. In this context, the Court concludes that a state court, not a federal court, should resolve legal disputes that run to the heart of how Maine state government is to function. Even though immigration policy is largely a federal concern, in the context of this internecine dispute between elected Maine officials, the federal court would risk meddling in a dispute that resonates with state governmental and policy concerns.

### 1. The Artful Pleading Rule

"The 'artful pleading rule' bars a plaintiff from concealing a necessary federal question by omitting it from the complaint." *Narragansett Indian Tribe of R.I. v. R.I.*, 407 F.3d 450, 455 n. 2 (1st Cir. 2005) (citing *Franchise Tax Bd.*, 463 U.S. at 22)). Plaintiffs admit that they purposefully crafted their complaint to avoid federal jurisdiction, noting that they "intentionally limited their case to one which did not

claim a violation of any federal law or the United States Constitution." *Pls.' Reply* at 5. Therefore, the artful pleading rule potentially applies. Nevertheless, as artful as the drafters were in this case, the Court has resolved the remand question on the critical issue of the proper balance between federal and state judicial authority.

## 2.    Complete Preemption

A second exception to the well-pleaded complaint rule is a doctrine known as "complete preemption." In their answer, Defendants assert preemption as an affirmative defense. *Answer* at 6 ("Some or all of Plaintiffs' claims are contrary to and/or preempted by federal law, 8 U.S.C. § 1621 and U.S. Constitution Art. VI, cl. 2.").[6]

Generally, asserting a federal defense or anticipating such a defense in the complaint does not create federal-question jurisdiction. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 ("To determine whether the claim arises under federal law, we examine the 'well-pleaded' allegations of the complaint and ignore potential defenses . . . . [A] defense that relies on the . . . pre-emptive effect of a federal statute. . . will not provide a basis for removal"). There is an exception to this general rule, however, known as the "complete preemption doctrine."

In some situations, the Supreme Court has concluded that "the preemptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint

---

[6]    "[O]rdinary preemption- - *i.e.*, that a state claim conflicts with a federal statute- - is merely a *defense* and is not a basis for removal." *Fayard v. Ne. Vehicle Servs., LLC,* 533 F.3d 42, 45 (1st Cir. 2008) (emphasis in original). Thus, a conflict between Plaintiffs' state claims and 8 U.S.C. § 1621 does not create federal question jurisdiction.

rule." *Caterpillar Inc. v. Williams*, 482 U.S. at 393; *see Franchise Tax Board v. Constr. Laborers Vacation Trust*, 463 U.S. at 24 ("[I]f a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law").   Supreme Court decisions finding complete preemption "share a common denominator: exclusive federal regulation of the subject matter of the asserted state claim, coupled with a federal cause of action for wrongs of the same type."   *Lopez-Munoz v. Triple-S Salud, Inc.*, 754 F.3d 1 (1st Cir. 2014) (quoting *Fayard,* 533 F.3d 42 at 46).   The Supreme Court has applied the complete preemption doctrine in "only a few contexts: labor contracts, claims for benefits from plans regulated by ERISA, and usury claims against federally chartered banks."   *Fayard* at 42 (citations omitted).

Because 8 U.S.C. § 1621 does not fit easily into any of the delineated complete preemption schemes, the Court does not address the argument further.

## IV.    CONCLUSION

The Court finds that it does not have jurisdiction in this case and GRANTS the Petitioners'/Plaintiffs' Motion to Remand (ECF No. 9).

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 4th day of December, 2014